WHIRLPOOL CORPORATION, a foreign corporation, Plaintiff-Respondent-Petitioner,

v.

Sharon ZIEBERT, Defendant-Petitioner,†

ALLSTATE INSURANCE COMPANY, a foreign insurance company, Defendant-Third Party Plaintiff-Appellant,

v.

Jaclyn ZIEBERT, Third Party Defendant-Intervenor-Respondent,

Kenneth ZIEBERT, Metropolitan Life Insurance Company and Blain Supply, Inc., Third Party Defendants.

Supreme Court

*No. 93–3307. Oral argument October 5, 1995.—Decided November 16, 1995.*

(Also reported in 539 N.W.2d 883.)

†Motion for Reconsideration denied January 23, 1996.

For the plaintiff-respondent-petitioner there were briefs by *J. Ric Gass, Mark M. Leitner* and *Kravit Gass & Weber, S.C.*, Milwaukee and oral argument by *Mark M. Leitner*.

For the defendant-petitioner there were briefs by *Diane Loftus* and *F. William Russo & Associates*, Milwaukee and oral argument by *Gordon K. Aaron* of *Alex, Aaron & Goldman, S.C.*, Milwaukee.

For the defendant-third party plaintiff-appellant, there was a brief by *Robert J. Lauer, Christine M. Benson* and *Kasdorf, Lewis & Swietlik, S.C.*, Milwaukee and oral argument by *Robert J. Lauer*.

Amicus curiae brief was filed by *Timothy J. Strattner, Linda Vogt Meagher* and *Schellinger & Doyle, S.C.*, Brookfield for the Civil Trial Counsel of Wisconsin and the Wisconsin Insurance Alliance.

Amicus curiae brief was filed by *D. J. Weiss* and *Habush, Habush, Davis & Rottier, S.C.*, Rhinelander for the Wisconsin Academy of Trial Lawyers.

DONALD W. STEINMETZ, J.   The issue before this court is whether a family member exclusion clause in a homeowner's insurance policy can bar coverage for a third party contribution action brought against an insured. We hold that family member exclusion clauses which apply to contribution claims against an insured are not contrary to public policy.

Jaclyn Ziebert, at the age of three, injured her hand in a meat grinder allegedly manufactured by Whirlpool Corporation (Whirlpool) and sold by Blain Supply, Inc. (Blain). Jaclyn, along with her parents, Kenneth and Sharon Ziebert, and their health insurer, Metropolitan Life Insurance Company, filed an action

against Whirlpool and Blain in Milwaukee County Circuit Court to recover damages for Jaclyn's injuries. This appeal arises from a separate contribution action filed by Whirlpool against Sharon Ziebert and her homeowner's liability insurer, Allstate Insurance Company (Allstate), wherein Whirlpool alleges that Jaclyn's injuries were caused by Sharon Ziebert's negligent supervision.

Allstate moved for summary judgment in the contribution action, arguing that the family exclusion clause found in Sharon Ziebert's policy released it from any obligation to provide coverage to Sharon. The Milwaukee County Circuit Court, Louise M. Tesmer, Judge, denied the motion, but the court of appeals reversed and granted summary judgment in Allstate's favor. The court of appeals found that the family exclusion clause in question unambiguously included contribution claims such as the one brought by Whirlpool against Sharon. *See Whirlpool Corp. v. Ziebert,* 188 Wis. 2d 453, 456-57, 525 N.W.2d 128, 129-30 (1994). We find the conclusion reached by the court of appeals correct and affirm its decision.

This court will consider two questions in reaching this decision. The first, which has broader significance, is whether family exclusion clauses which apply to indirect claims, such as a contribution action, are contrary to public policy. Second, we must determine if the specific language of the family exclusion clause in this case includes contribution claims.

The first question involves issues of public policy and contract enforcement. When answering such questions, this court is mindful that the freedom to contract has long been protected in this state. *See Journal/Sentinel, Inc. v. Pleva,* 155 Wis. 2d 704, 710, 456

N.W.2d 359, 362 (1990); *Watts v. Watts*, 137 Wis. 2d 506, 521, 405 N.W.2d 305, 309 (1987). Although a court may question the validity of a contract on the grounds of public policy, this measure is extreme and should only be exercised in cases free from doubt. *See Continental Ins. Co. v. Daily Express, Inc.*, 68 Wis. 2d 581, 589, 229 N.W.2d 617, 621 (1975). It is under these standards that we determine whether or not family exclusion clauses which relate to third party contribution claims are valid.

This is not the first time a question regarding family exclusion clauses has been before this court. In *Shannon v. Shannon*, 150 Wis. 2d 434, 456, 442 N.W.2d 25, 35 (1989) we found that:

> Homeowner's insurance policies often cover liability for injury to third persons. These same policies frequently exclude coverage for liability to 'residents' of the household . . . . The purpose has been explained so 'as to exempt the insurer from liability to those persons to whom the insured, on account of close family ties, would be apt to be partial in case of injury.' . . . Thus, the exclusion protects insurers from situations where an insured might not completely cooperate and assist an insurance company's administration of the case.

*Quoting A.G. v. Travelers Ins. Co.*, 112 Wis. 2d 18, 20-21, 331 N.W.2d 643, 644 (Ct. App. 1983) (citations omitted). We then specifically held that "such exclusions serve a legitimate purpose and are not contrary to public policy." *Id. Shannon*, however, only dealt with a direct suit against an insured family member. The question of whether a family exclusion clause may also reach to contribution claims by a third party was not before us. This is, therefore, a question of first impression for this court.

The underlying concern in *Shannon* was the possibility of family member collusion in intra-family lawsuits. Because of the gravity of this concern, we did not require in *Shannon* that either party actually prove collusion on a case-by-case basis. Instead, this court assumed collusion in all cases, thereby finding that family exclusion clauses covering direct actions are not contrary to public policy.[1] The question is, then, whether such clauses should be allowed to also encompass indirect actions such as contribution claims. Most courts which have addressed this question have concluded that they should. *See Groff v. State Farm Fire and Cas. Co.*, 646 F.Supp. 973, 975 (E.D. Pa. 1986); *Chrysler Credit Corp. v. United Services Auto Ass'n*, 625 So.2d 69, 73 (Fla. App. 1993); *Utley v. Allstate Ins. Co.*, 24 Cal. Rptr. 2d 1, 4-5 (Cal. App. 1993); *State Farm Fire and Cas. Co. v. Ondracek*, 527 N.E.2d 889, 891 (Ill. App. 1988); *Parker v. State Farm Mut. Auto Ins. Co.*, 282 A.2d 503, 508-09 (Md. Ct. App. 1971). We agree.

Ultimately, the reasoning supporting *Shannon*, collusion in intra-family lawsuits, is just as persuasive when applied to contribution claims. A real-world hypothetical demonstrates the possibility of collusion in indirect claims quite clearly. If Whirlpool did not have the financial resources to meet Jaclyn's judgment, a contribution claim against Sharon and Allstate may be the only source of funds. In such a situation, Sharon may be more concerned with her daughter receiving

---

[1] We do not find convincing Whirlpool's argument that the standard "cooperation clause" in most insurance policies adequately protects insurance companies from collusion. This argument was implicitly rejected in *Shannon* where the policy in question also contained such a cooperation clause. Furthermore, it is certainly not contrary to public policy for a party to bargain for multiple contractual protections.

compensation for her injuries than with cooperating fully with Allstate. Furthermore, it is unlikely that Sharon would defend herself with as much zeal as she would if her own assets were at stake.[2] The Eastern District Court of Pennsylvania, when faced with a similar question, correctly recognized that "[t]he potential for collusion is virtually the same in either situation [direct suits against family members or third party contribution claims against family members]—at least in the sense that . . . the parents would have no incentive to defeat or reduce the claim." *Groff*, 646 F.Supp. at 975.

■

It must be noted that our decision does not imply any wrongdoing on the part of the Zieberts. In fact, the possibility of collusion in this case seems quite low, if not nil.[3] However, although this court never ignores the circumstances of a particular case, there are times when we must look beyond the immediate facts to principles of public policy and the broader ramifications that our decisions have on the people of this state as a whole. We are persuaded that the possibility of collusion is great enough to warrant allowing family exclusion clauses to cover contribution actions. Therefore, we hold that such clauses are not contrary to

---

[2] The insured's defense of his or her actions, of course, would be central to the determination of any such contribution claim.

[3] There are a number of factors which support Sharon's claim that there is no collusion in this case. These include: Sharon has her own claim against Whirlpool which would be diminished by any finding of negligence on her part; her policy limit may be quite low in relation to the injuries suffered by Jaclyn; and Sharon has retained her own counsel throughout these proceedings to represent her interests.

public policy, even though there may be no collusion in this particular case.

The next issue is whether or not the language of this specific family exclusion clause encompasses contribution actions. Construction of an insurance policy is a question of law which this court reviews *de novo*. *See Lambert v. Wrensch*, 135 Wis. 2d 105, 115, 399 N.W.2d 369, 373-74 (1987). Insurance contracts are subject to the same rules of construction as other contracts. *See Ehlers v. Colonial Penn. Ins. Co.*, 81 Wis. 2d 64, 74, 259 N.W.2d 718, 723 (1977).

The first step in such analysis is, of course, to examine the language of the policy itself. It is fundamental in Wisconsin that "ambiguities in coverage are to be construed in favor of coverage, while exclusions are narrowly construed against the insurer." *Smith v. Atlantic Mut. Ins. Co.*, 155 Wis. 2d 808, 811, 456 N.W.2d 597, 598 (1990); *see also Davison v. Wilson*, 71 Wis. 2d 630, 635-36, 239 N.W.2d 38, 41 (1976). This rule of strict construction, however, is not applicable if the policy is unambiguous. *See, e.g., Bertler v. Employers Insurance of Wausau*, 86 Wis. 2d 13, 17, 271 N.W.2d 603, 605 (1978); *D'Angelo v. Cornell Paperboard Products Co.*, 59 Wis. 2d 46, 49, 207 N.W.2d 846, 848 (1973); *Leatherman v. American Family Mut. Ins. Co.*, 52 Wis. 2d 644, 650, 190 N.W.2d 904, 907 (1971). Furthermore, the principle of construing exclusions narrowly does not allow a court to completely eviscerate an exclusion which is clear from the face of the policy. Rules of construction cannot be used to rewrite the clear and precise language of a contract. *See Gonzalez v. City of Franklin*, 137 Wis. 2d 109, 122, 403 N.W.2d 747, 752 (1987); *In re Marriage of Levy v. Levy*, 130 Wis. 2d 523,

533, 388 N.W.2d 170, 174-75 (1986); *Limpert v. Smith*, 56 Wis. 2d 632, 640, 203 N.W.2d 29, 33-34 (1973); *Meyer v. City of Amery*, 185 Wis. 2d 537, 543, 518 N.W.2d 296, 298 (Ct. App. 1994).

In this case the family exclusion clause in question, even when construed narrowly, is unambiguous and clearly contemplates contribution claims. It states: "We do not cover bodily injury to an insured person . . . whenever any benefit of this coverage would accrue directly or indirectly to an insured person."[4]

A close reading of the policy language reveals that the key phrase is: "whenever any benefit of this coverage would accrue *directly* or *indirectly* to an insured person." (emphasis added). The term "direct" is defined as: "[i]mmediate; proximate; by the shortest course; without circuity; operating by an immediate connection or relation, instead of operating through a medium; the opposite of indirect." Black's Law Dictionary 459 (6th ed. 1990). A "direct" benefit, therefore, would accrue to Jaclyn Ziebert by way of a "direct" claim against Sharon Ziebert and Allstate. It is undisputed that Allstate would not be required to cover this type of action. The term "indirect" is defined as: "[n]ot direct in relation or connection; not having an immediate bearing or application; not related in the natural way." Black's Law Dictionary 773. An indirect benefit would incur to Jaclyn if Whirlpool won its contribution claim since the money Whirlpool receives will, in all

---

[4] It is undisputed that Kenneth, Sharon and Jaclyn Ziebert are all "insured persons" under the Allstate policy. The policy defines an "insured person" as:

You and, if a resident of your household:

a) any relative; and

b) any dependent person in your care.

practical respects, be funneled through to Jaclyn. Jaclyn would receive, in the plainest sense of the word, an indirect benefit.

■

If possible, a court should interpret a contract so that all parts are given meaning. *See Stanhope v. Brown County*, 90 Wis. 2d 823, 848-49, 280 N.W.2d 711 (1979). Only by interpreting the policy in the above manner can this be accomplished. The direct/indirect benefit language was obviously meant to differentiate between two possible types of benefits and to clarify the policy language to ensure that contribution claims were included in the scope of the clause. The California Court of Appeals confronted identical language, albeit in a different context, and reached the same conclusion. *See State Farm Mut. Auto. Ins. Co. v. Vaughn*, 208 Cal. Rptr. 601 (Cal. App. 1984). In California, a statute had authorized automobile insurers to exclude from coverage "liability for bodily injury to an insured." Cal. Ins. Code § 11580.1(5)(c) (1982). The legislature then amended this section to exclude from coverage "liability for bodily injury to an insured . . . whenever the ultimate benefits of that indemnification accrue directly or indirectly to an insured." Cal. Ins. Code § 11580.1(5)(c). The California Court of Appeals specifically held that the additional language *clarified* the scope of the original language so that it was more clearly understood that contribution claims would be covered by the clause. It stated that the amendment was necessary to make clear "that there is no duty to indemnify an insured named in a cross-complaint where there would be no duty to indemnify if the insured were sued directly." *Vaughn*, 208 Cal. Rptr. at 603. The reasoning of the *Vaughn* court was sound.

We are not persuaded by Whirlpool's argument that a contribution claim is not a bodily injury and therefore not covered under the language of the exclusion clause. Although Whirlpool is correct in asserting that we have scrupulously found that a claim for contribution is distinct from the underlying cause of action—*State Farm Mut. Automobile Ins. Co. v. Schara*, 56 Wis. 2d 262, 266-67, 201 N.W.2d 758, 760 (1972); *Johnson v. Heintz*, 73 Wis. 2d 286, 243 N.W.2d 815, 822-23 (1976); *Schara* and its progeny stand for the principle that a contribution claim based in tort should be treated no differently than one based in contract. *See Schara*, 56 Wis. 2d at 266-67. This in no way asserts or implies that a claim for contribution is wholly separate from the underlying claim. In fact, contribution claims are dependent and stem from the original action; without it they would not exist at all.

The liability being asserted in Whirlpool's contribution claim against Sharon Ziebert is based on the claim for damages suffered by Jaclyn Ziebert. That liability is identical whether there is a direct claim against Sharon Ziebert by her daughter or whether the claim is indirectly asserted through a contribution claim by Whirlpool. To say that Jaclyn Ziebert is not receiving a benefit because her recovery comes from a contribution claim rather than a direct claim for personal injuries is the ultimate tribute to form over substance. Such a conclusion defies both logic and common sense.

The decision of the court of appeals enforces the public policy of avoiding potential collusion between family household members. *See Shannon*, 150 Wis. 2d at 456. Furthermore, the language of the policy is clear

and unambiguous and clearly encompasses contribution claims, and, as such, legitimately precludes coverage to Sharon Ziebert.

*By the Court.*—The decision of the court of appeals is affirmed.