EHLERS, Appellant, v. COLONIAL PENN INSURANCE COMPANY, Respondent.

*No. 75–669. Argued November 1, 1977.—*
*Decided November 30, 1977.*
(Also reported in 259 N.W.2d 718.)

For the appellant there was a brief and oral argument by *Stephen R. Miller* of Milwaukee.

For the respondent there was a brief by *Kluwin, Dunphy, Hankin & McNulty,* and oral argument by *Eric J. Van Vugt,* of Milwaukee.

HANLEY, J. The following issues are presented on appeal:

1. Did the plaintiff give notice of the accident as soon as practical?

2. Did the plaintiff rebut the presumption of prejudice which results from untimely notice?

3. Did the defendant's disclaimer of liability relieve the plaintiff of the requirement to submit proofs of loss?

*Notice of Accident*

The parties do not dispute the fact that the defendant was not notified of the accident which caused the plain-

tiff's injuries until March 7, 1974—a lapse of almost twelve and one-half months after the accident. What the parties do dispute, however, is whether the plaintiff notified the defendant as soon as practical.

Under the provisions of the original insurance policy notice of accident was required to be given "as soon as practicable."

This court recognizes that accident notification requirements complying with sec. 204.34(3), Stats. (1973) (repealed by L. 1975, c. 375, §13, and substantially re-enacted as sec. 632.34(4), Stats. (1975)) establish a condition precedent to the insurer's liability on the policy. *Allen v. Ross,* 38 Wis.2d 209, 213–14, 156 N.W.2d 434 (1968). The purpose of these provisions is to encourage prompt notification to insurers of an accident so as to permit them to investigate the circumstances of the occurrence, contact known witnesses while they are still available and before their recollection of the event is forgotten or distorted, and find unknown witnesses to the occurrence. *Resseguie v. American Mutual Liability Insurance Co.,* 51 Wis.2d 92, 100, 186 N.W.2d 236 (1971).

The plaintiff contends that as a matter of law she notified the defendant of the accident as soon as practicable. However, this determination is essentially one of fact which is to be based not merely on the passage of time but upon all the facts and circumstances of the particular case. *RTE Corp. v. Maryland Casualty Corp.,* 74 Wis.2d 614, 627–28, 247 N.W.2d 171 (1976). Therefore, when a party appeals a determination of this nature, this court has traditionally applied two rules: (1) that the weight to be given testimony and the credibility of the witnesses is for the trier of facts, in this instance the trial court; and (2) the findings of the trier of fact must be sustained unless they are against the great weight and

clear preponderance of the evidence. *Resseguie v. American Mutual Liability Insurance Co., supra* at 105.

In determining that the notice of accident was not as soon as practicable, the trial court stated in its memorandum opinion:

"In the case at bar the defendant has shown a lapse of time of approximately 12 and a half months before it received any notice of the accident. The excuse that the plaintiff gives for this lapse of time is that she was unable to leave the house for the duration of the year of 1973 and that she was unaware that she was covered under her brother's policy regarding an uninsured motorist provision. However, the plaintiff did retain the services of their family attorney almost immediately after the accident and she has not presented sufficient evidence to explain the reason for the family attorney's failure to investigate the uninsured motorist coverage sooner, or show any justification or excuse whatsoever on his part in the delay in filing the notice of claim. Therefore, the Court finds that notice was not given 'as soon as practicable.' "

Here, the plaintiff testified that within a few days of the accident, she sent her brother to see the family attorney, and between the time of her release from the hospital and the time she personally visited this attorney, she stated she talked to him over the phone about the injuries resulting from the accident. While the plaintiff's brother testified that he first brought the policy to this attorney at the meeting held in late February, 1974, he admitted that he had spoken with this attorney five or six times in 1973 after the accident. He also testified that he had read and understood the terms of the original policy when he first received it in 1969.

Under these facts and circumstances, we think the trial court's determination that the notice of accident was not given as soon as practical is not against the great weight and clear preponderance of the evidence.

*Prejudice to the Insurer*

By placing the burden of proof upon the person claiming liability, sec. 204.34(3), Stats., has generally been viewed as creating a presumption of prejudice because of untimely notice. *Sanderfoot v. Sherry Motors, Inc.*, 33 Wis.2d 301, 309, 147 N.W.2d 255 (1967). Once the insurer has established that it did not receive notice as soon as possible, the burden shifts to the claimant to prove that the insurer was not prejudiced by an untimely notice. *Resseguie v. American Mutual Liability Insurance Co., supra* at 104.

The trial court, when concluding that this presumption of prejudice had not been overcome, stressed the testimony given by the insurer's investigator, Norbert Kurczewski, that one witness to the accident refused to discuss the accident and that another witness could recall facts only vaguely.

Mr. Kurczewski testified that his employer, F. J. Rohde Co., was assigned to investigate the plaintiff's claim on March 21, 1974. One or two days later Kurczewski was assigned to the case. He immediately obtained a copy of the police report and visited the scene of the accident. At this time he intended to canvass the neighborhood for witnesses and to conduct further investigations. He postponed further inquiry into the matter, however, apparently on the recommendation of the defendant's claims examiner.

Mr. Kurczewski resumed his investigation in late May or early June, 1974. He canvassed the neighborhood for additional witnesses without success, and in June he attempted to interview one of two witnesses indicated on the police report, Dennis Flaherty. Flaherty did not make a statement at that time but instead gave Kurczewski a copy of a statement he had given to the plaintiff's investigator, A. Vernon Jensen. In late June and early July, Kurczewski attempted to interview the second wit-

ness indicated on the police report, Ivan Beernink, Kurczewski testified that Beernink was cooperative and suggested that he come and see him personally. Kurczewski did visit Beernink's residence in Cedar Grove to get a statement, but Beernink had to postpone the meeting because of business reasons. Consequently, Kurczewski settled for a recorded telephone statement. At the trial, Kurczewski criticized this statement for, in his opinion, Beernink was only able to vaguely recall the facts of the accident.

While Kurczewski's testimony in certain respects further buttressed the presumption that the defendant had been prejudiced by the untimely notice of accident, the testimony of other witnesses diminished it. The plaintiff's investigator, A. Vernon Jensen, was assigned to investigate the case in early March, 1974. He obtained the police report, checked the scene of the accident, and interviewed and obtained a signed statement from Flaherty on March 26, 1974. Jensen testified that Flaherty's recollection of the incident was quite good and corroborated the facts on the police report. Jensen obtained a signed statement from Beernink on January 8, 1975. In Jensen's opinion, Beernink "seemed to recall the facts of the accident."

Indeed, the facts of the accident are clear: Mr. Runge, the driver of the vehicle involved in the accident, was westbound on Milwaukee Avenue in the city of South Milwaukee. When he attempted to turn left on 10th Avenue, he struck the plaintiff who was on the crosswalk. The only excuse the driver gave was that the sun was in his eyes. Neither the investigator for the plaintiff nor the investigator for the defendant testified that they had discovered any fact which would indicate that there would be no liability on the part of the insurer. The plaintiff's investigator concluded that his investigation was in no way hampered by the twelve and one-half

month delay. Although the defendant's investigator testified that his telephone interview with the witness Beernink was unsatisfactory because, in the investigator's opinion, the witness' recollection of the facts was vague, he did not explain the reason for his opinion. This investigator did state that this witness was cooperative and did corroborate the information given in the police report. The defendant's investigator also testified that the other witness to the accident, Flaherty, was unsatisfactory because the witness would not give him an original statement but only a copy of a statement given to the plaintiff's investigator. However, this investigator admitted that he could not find any fault with this statement and that he thought this witness was trying to be as honest as possible. The defendant's investigator was also critical of the fact that the motorist involved in the accident, Runge, would not meet with him at all. However, Runge did testify at the trial that he was operating the automobile which struck the plaintiff and that he did not have any insurance at the time.

Finally, the defendant's investigator admitted that he was able to conclude from the information available to him how the accident occurred. It is noted that the defendant's investigation was deliberately delayed for two months from late March to late May or early June, 1974. These factors, together with the undisputed fact that the plaintiff was an additional insured under the policy and that the driver of the automobile was uninsured at the time, make it difficult to see how the defendant was prejudiced by the untimely notice of accident. Therefore, we hold that the trial court's finding that the plaintiff had failed to demonstrate that the defendant was not prejudiced by untimely notification of the accident is against the great weight and clear preponderance of the evidence.

*Proof of Loss*

The plaintiff contends that this court should hold as a matter of law that the defendant's disclaimer on the ground of untimely notice of accident made plaintiff's compliance with the policy's proof of loss provision unnecessary.

The proof of claim provision here in question is relatively common to automobile policies, and in the American Maturity policy, it states in pertinent part:

"MEDICAL REPORTS: As soon as practicable, the person making claim shall give to the company written proof of claim. . . . Proof of claim shall be made, upon forms furnished by the company, within 15 days after receiving notice of claim."

The defendant takes the position that even if the notice of accident was effective, the plaintiff failed to timely submit her proof of loss, resulting in a breach which defeats recovery on the policy. The plaintiff, on the other hand, contends that the defendant waived the proof of loss requirement when it notified the plaintiff that coverage would be denied on the grounds of untimely notice of accident. It is generally held that a denial of liability by an insurer, made during the period prescribed by the policy for the presentation of proofs of loss, will ordinarily be considered as a waiver of the provision requiring the proofs to be submitted. 44 Am. Jur.2d, *Insurance*, sec. 1514 (1969). *See also, Hart v. Fraternal Alliance*, 108 Wis. 490, 84 N.W. 851 (1901). Therefore, to determine whether the defendant's denial of liability constituted a waiver of the proofs of loss requirement, it is necessary to determine whether the denial of liability occurred during the period in which the proofs could have been timely submitted.

The basic facts relating to the plaintiff's submission of proofs of her loss are not in dispute. The accident

occurred on February 26, 1973; the plaintiff was discharged from the hospital April 30, 1973; the defendant received the plaintiff's notice of accident on March 7, 1974; the defendant requested further information from the plaintiff on March 12, and the plaintiff sent this information on March 14; the defendant disclaimed coverage because of the alleged untimely notice of accident on March 27; and the plaintiff submitted proofs of her loss on May 28, 1974. The defendant does not challenge the sufficiency of the proofs but merely alleges that they were untimely.

The proof of loss provision provides that "as soon as practicable," the person making the claim shall submit the required proofs to the insurer. The purpose of these provisions has been distinguished from the purpose of the notice of accident provision:

"As used in a policy of automobile insurance, notice of loss and proofs of loss are distinct concepts, and they have different purposes and functions. The provisions for notice of loss refer to information to the insurance company of the loss of, or damage to, the insured automobile, while the clause pertaining to proofs of loss usually requires a statement of loss, signed and sworn to by the insured, containing specified information.

"The object of requiring proofs of loss is to afford proper information to the insurance company as to the facts regarding the loss and its liability, in order to make it possible for it to adjust and determine the amount and extent of the loss." 8 Blashfield, *Automobile Law and Practice,* §331.1 (3rd Ed. 1966).

The urgency of preserving evidence of the occurrence resulting in the loss does not appear to be a part of the purpose of the proof of loss requirement as it is of the notice of accident provision. It is reasonable to assume that claimants do not submit proofs of loss at the same time as they submit a notice of accident, and from a reading of the contract here in question, it does not

appear that the insurer expects them to. Therefore, even though, as in this case, the duty of the claimant to submit a notice of accident and proofs of loss are both stated in terms of "as soon as practicable," these provisions do not refer to the same time period.

The defendant contends that the proof of loss provision contained in the American Maturity policy requires proof of loss to be submitted "as soon as practicable" or in any event 15 days after filing notice of accident. Because there is no dispute that the plaintiff submitted her proofs of loss some two and one-half months after the defendant was notified of the accident, the defendant argues that its denial of coverage, sent 15 days after being notified of the accident, was not a waiver of this provision.

We think that the defendant's interpretation of the proof of claim provision of the contract is not unambiguously stated by the language contained therein. First, it is not clear that the notice of claim to which the 15-day time limit refers is the same as the notice of accident. Second, assuming that the notice of accident is the same as the notice of claim, to hold that this provision requires proofs of loss within 15 days of the insurer's receipt of the notice of claim (or accident) would negate the language of the first sentence of this provision requiring proofs to be submitted only "as soon as practicable." Further, from a practical standpoint, it is questionable that the claimant could ever know when the insurer receives the notice.

Contracts for insurance are controlled by the same principles of construction that are applicable to other contracts. They are construed to give effect to the intentions of the parties. When ambiguity exists in such a contract, the ambiguity will be resolved in favor of the insured and in accordance with the principle that the test is not what the insurer intended the words to mean but

what a reasonable person in the position of the insured would have understood them to mean. *Garriguenc v. Love,* 67 Wis.2d 130, 134–35, 226 N.W.2d 414 (1975). Generally, the construction of words and clauses in an insurance policy is a question of law. *Garriguenc v. Love, supra* at 133.

We construe the provision in question to mean that the claimant must submit the proofs only "as soon as practicable," the determination of which should be based upon all of the facts and circumstances of the particular case.

Here the defendant denied liability 15 days after the plaintiff submitted her notice of accident. The final question of whether the defendant denied coverage within the time the plaintiff could have satisfied this "as soon as practicable" time limitation might be otherwise stated: whether the plaintiff would have satisfied the "as soon as practical" time limitation had she submitted her proofs sixteen days after notifying the insurer of her accident.

In *RTE Corp. v. Maryland Casualty Co., supra* at 629, this court stated:

"Before a court may find noncompliance with notice provisions as a matter of law, it must be able to say that (1) there is no material issue of fact as to when notice was given, and when under the policy the duty to give it arose; and (2) no jury could reasonably find the delay to have constituted only such time as was 'reasonably necessary' under the circumstances."

■ We conclude that under the facts and circumstances of this case, particularly the fact that the notice of accident sent by the plaintiff to the insured on March 7 was returned by the insurer on March 12 with a request for additional information and the fact that the defendant denied liability no more than seven days after receiving the additional information, the defendant denied coverage as a matter of law within that time the plaintiff

could have submitted her proofs. Consequently, the defendant waived the defense based upon this provision.

*By the Court.*—Judgment reversed and cause remanded for further proceedings not inconsistent with this opinion.